**Vernon BOWDEN, Petitioner,**

v.

**John KEANE, Superintendent, Woodburne Correctional Facility, Dennis C. Vacco, Attorney General of New York, Respondents.**

**No. 98 Civ. 4203JES.**

United States District Court,
S.D. New York.

Feb. 10, 2000.

Judith Preble, Sue Wycoff, Legal Aid Society, New York City, for petitioner.

Eliot Spitzer, Atty Gen., New York City, for respondents.

## MEMORANDUM OPINION
## AND ORDER

SPRIZZO, District Judge.

Vernon Bowden ("petitioner" or "Bowden") brings the instant petition pursuant to 28 U.S.C. § 2254 against the Superintendent of Woodburne Correctional Facility and the Attorney General of the State of New York. Petitioner challenges his state court conviction on the ground that a closure of the courtroom to the general public during the testimony of a government undercover officer witness violated his right to a public trial under Sixth and Fourteenth Amendments to the United States Constitution. For the reasons set forth below, the instant petition is denied.

### BACKGROUND

Petitioner's conviction arose out of a "buy and bust"[1] transaction in which he sold three vials of crack cocaine to Detective Billingy ("Billingy"), an undercover police officer. According to Billingy's testimony, which he gave in open court, Billingy observed petitioner on July 2, 1993 outside of a building near 126th Street in Manhattan. Trial Transcript ("Tr.") at 288. As Billingy approached the building, petitioner "hissed" at him and gestured for him to wait. *Id.* Billingy testified further that petitioner then led him into the building and asked what he wanted. *Id.* at 288–89, 339. Billingy told petitioner that he wanted "three" and gave petitioner twelve dollars in pre-recorded buy money. *Id.* at 289, 298, 339. Billingy then testified that petitioner walked up several steps, lifted a doormat, and removed three vials of crack cocaine from a bag under the mat.

He then descended the stairs and gave the vials to Billingy. *Id.* at 289, 297.

Detective Weathers ("Weathers"), another undercover officer, subsequently testified in *closed* court that he followed Billingy from a half-block behind during the operation, acting as his "ghost."[2] *Id.* at 367–69. He testified further that from a distance of approximately 100 to 150 feet, he observed petitioner leave and enter the building with Billingy, and that thereafter, he transmitted a detailed description of petitioner to the arrest team. *Id.* at 369–371. He subsequently joined Billingy in an undercover car, where, according to both Billingy and Weathers' testimony, they radioed in a description of petitioner and did a drive-by identification while petitioner was detained. *Id.* at 292. A member of the arrest team then testified that he entered the building and recovered the buy money and a vial of crack cocaine from under the mat on the stairs. *Id.* at 388–89. The only other individual to testify was a police chemist who stated that the three vials recovered from petitioner did in fact contain crack cocaine. *Id.* at 427.

On January 13, 1994, the trial court held a *Hinton*[3] hearing on the government's motion to close the courtroom during Detective Weathers' testimony. During the hearing, Weathers testified that he was assigned to the North Manhattan Narcotics District, where he was participating in several ongoing narcotics investigations. *Id.* at 215–216. He also indicated that he had been threatened by drug dealers who suspected that he was a police officer, stating: "I've already been threatened by alleged drug dealers for being a cop. I'm supposed to be killed or whatnot [sic], mutilated, strangulated [sic]." *Id.* at 218, 216–20. Moreover, Weathers testified that he had approximately twenty-five to thirty

---

1. A "buy and bust" transaction occurs when an undercover officer buys illegal narcotics from a suspect who is subsequently arrested for selling the narcotics.

2. A "ghost" is an undercover officer who follows another undercover officer that makes a

narcotics purchase to provide security. Tr. at 275.

3. *People v. Hinton,* 31 N.Y.2d 71, 286 N.E.2d 265, 334 N.Y.S.2d 885 (1972).

"lost subjects," or suspects from whom he had bought drugs but whom had not been arrested. *Id.* at 217. Defense counsel briefly cross-examined Weathers, and after summation by the prosecution, objected to the closure and rested on the record. *Id.* at 222.

The trial judge granted the prosecution's motion to close the courtroom, stating:

> I believe the record now does substantiate closure of the courtroom, and I am not going to summarize it. I think it speaks for itself, not the least factor of which is the way information circulates throughout this system[.][It] is perfectly conceivable to me that word will get out if I did not close the courtroom that an undercover officer would be testifying and that he will be identified, and it isn't necessary for people to be sitting in the courtroom.

*Id.* at 222–23.

At the conclusion of petitioner's trial, the jury found petitioner guilty of one count of criminal sale of a controlled substance in the third degree and not guilty of two counts of criminal possession of a controlled substance. *Id.* at 533–534.

Petitioner appealed his conviction to the New York Supreme Court, Appellate Division, First Department, arguing that closure of the courtroom during Detective Weather's testimony violated his Sixth Amendment right to a public trial, and that his sentence was excessive. On December 17, 1996, the Appellate Division affirmed petitioner's conviction. *People v. Bowden,* 234 A.D.2d 127, 651 N.Y.S.2d 453 (1st Dep't 1996). The New York Court of Appeals denied petitioner leave to appeal on July 1, 1997. *People v. Bowden,* 90 N.Y.2d 891, 685 N.E.2d 215, 662 N.Y.S.2d 434 (1997). Bowden filed the present petition on June 16, 1998, claiming that closure of the courtroom violated his Sixth Amendment right to a fair trial.

On May 28, 1999, Magistrate Judge Henry Pitman issued a Report and Rec-

ommendation finding that under the relevant legal standard: (1) the limited closure of the courtroom was justified on the basis of Detective Weathers' safety; (2) the closure of the Court was no broader than necessary; (3) the trial court had no duty to consider alternatives to partial closure; and (4) the trial judge's failure to make findings of fact was in good faith. *See* Report and Recommendation dated May 28, 1999 ("Mag.Rep.") at 22–23. On the basis of these findings, Magistrate Judge Pitman recommended that petitioner's application for a writ of habeas corpus be denied and that petitioner also be denied a certificate of appealability. *Id.* at 23–24.

## DISCUSSION

The Court agrees with Judge Pitman's conclusion that Bowden's petition for a writ of habeas corpus must be denied. However, since Judge Pitman's ruling relied heavily on the now vacated decision in *Brown v. Andrews,* 1998 WL 293994 (S.D.N.Y. June 5, 1998), *vacated by, Brown v. Andrews,* 180 F.3d 403 (2d Cir.1999), this Court must reexamine the petition without recourse to that vacated decision.

■ In *Waller v. Georgia,* the Supreme Court articulated a four-part test for courtroom closure: (1) the party seeking to close the trial must advance an overriding interest that is likely to be prejudiced in the absence of closure; (2) the closure must be no broader than necessary to protect that interest; (3) the trial court must consider reasonable alternatives to closure; and (4) the trial court must make findings of fact to support closure. 467 U.S. 39, 48, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984).

Petitioner contends that the first, second and fourth prongs of the *Waller* test were not satisfied. The Court will address each of these arguments in turn.

■ *Waller'* s first prong may be met by a showing that closure is necessary to preserve either an undercover officer's effectiveness or his safety. *See Ayala v.*

*Speckard,* 131 F.3d 62, 72 (2d Cir.1997); *Ip v. Henderson,* 710 F.Supp. 915, 918 (S.D.N.Y.), *aff'd mem* 888 F.2d 1376 (2d Cir.1989). As to an undercover's effectiveness, the Second Circuit has held that, if the asserted risk "is that the officer would return to an area of operation where trial audience members might reside, that area must be defined with geographic particularity." *Andrews,* 180 F.3d at 406 (2d Cir.1999) (citing *Brown v. Kuhlmann,* 142 F.3d 529, 537 (2d Cir.1998)). Here, Weathers indicated only that all of his ongoing narcotics investigations and undercover drug purchases took place in New York County. Tr. at 215–16, 219. This geographic area clearly is not sufficiently specific to meet the standard articulated in *Kuhlmann.* 142 F.3d at 537 (finding that the geographic area of Brooklyn was not specific enough to justify closure).

■ Petitioner also argues that the record is insufficient to prove that Weathers' safety was in danger under the recent Second Circuit decision in *Andrews.* There, the Court considered courtroom closure in a "core" buy and bust case where an undercover officer's safety was presumably at risk because he would return to the same area as a previous arrest.[4] As the Court held, in these circumstances, "[t]he state must assert a specific connection between the perceived threat to the officer and the officer's public testimony in the particular proceeding." *Id.* at 407–08. In presenting this finding, the *Andrews* court specifically distinguished its decision in *Kuhlmann,* where it found the "dangerous nature of the drug trade"

was sufficient to prove that an undercover's safety was in danger.[5] As the *Andrews* court noted, the propriety of courtroom closure

turns in large measure on the significance of the testimony during the closure itself. Specifically, [Kuhlmann] did not involve the classic courtroom closure during the testimony of an undercover police officer *who was a party to a buy-and-bust drug transaction with the defendant.* In such a case, the prosecution invariably centers around the witness: the undercover officer who purchased the drugs provides the *only testimony* as to the defendant's identity as the seller. The only additional testimony is provided by the arresting officer and in some cases, a police chemist. While [the officer] happened to have been an undercover officer when he testified, [Kuhlmann] did not involve a drug transaction with the petitioner, nor did his testimony directly relate to the criminal activity for which petitioner is charged.... Under these circumstances, ... the closure did not violate the Public Trial Clause.

180 F.3d at 407 (emphasis added), quoting *Kuhlmann,* 142 F.3d at 534.

The relative significance of the testimony at issue here strongly parallels that at issue in *Kuhlmann.* Like the undercover officer in *Kuhlmann,* all testimony presented by Detective Weathers was cumulative to that presented by Detective Billingy, the most important prosecution witness. Like the victim in *Kuhlmann,* Detective Billingy testified in *open* court to all the essential details of the crime at issue. These details included that he

4. The term "core 'buy and bust' case" was used by the Second Circuit in *Andrews* to describe a case involving the testimony of an undercover officer who was an actual party to the drug transaction at issue. 180 F.3d at 407.

5. *Kuhlmann* involved a drugs and money for kidnapping scheme in which the defendant used an alias when stopped by police officers for a traffic infraction outside the building where the victim was being held. 142 F.3d at

532. When the police officers could not identify defendant as the individual they stopped, the prosecution presented two different officers who testified that defendant had used the same alias on previous occasions. *Id.* One of these officers was an undercover officer who testified in closed court because of his involvement in ongoing drug prosecutions. *Id.* at 537. This testimony was in addition to testimony from the victim directly identifying defendant as his kidnapper. *Id.* at 532.

asked petitioner for drugs, that he accompanied petitioner inside a building, and that petitioner took his money in exchange for drugs placed under a door-mat.

█ Detective Weathers, on the other hand, testified simply that he saw Billingy meet with petitioner outside the building and leave with him and that Billingy *later informed him* that it was petitioner who had in fact had sold him the drugs. The nature of such testimony hardly rises to the significance of that in *Andrews*. Indeed, unlike that case, Detective Weathers was in no way a party to the transaction, and in no way provided the only direct testimony "as to the defendant's identity as the seller." 180 F.3d at 407 (quoting *Kuhlmann*, 142 F.3d at 534).[6] Accordingly, the more demanding safety standard of *Andrews* is not warranted in the instant case. Rather, a general finding of "the dangerous nature of the drug trade" under *Kuhlmann* is sufficient to justify closure, a finding that is clearly appropriate given Weather's testimony that he feared for his safety because of his participation in ongoing drug prosecutions.

█ Petitioner next argues that the order of closure was broader than necessary, making closure improper under *Waller*'s second prong. More specifically, petitioner argues that the trial court should have mandated that Weathers enter the courtroom by a rear door rather than order complete closure during his testimony.

This Court, however, is compelled to conclude that closure was no broader than necessary to ensure the safety of Detective Weathers, and that accordingly, *Waller*'s second prong has been met. As the Magistrate Judge found, the limited closure at issue was no broader than necessary under the circumstances. Mag. Rep. at 16. In particular, the Second Circuit has held that "closure of the courtroom during the testimony of a single witness is itself a narrow alternative to closure for the duration of the proceeding," and that the trial judge has no further obligation to "consider alternatives to th[at] alternative." *Kuhlmann*, 142 F.3d at 538, *quoting Ayala v. Speckard*, 131 F.3d at 71 (2d Cir.1997). Here, the trial judge ordered the courtroom closed only during Detective Weathers' testimony and left all other witnesses, particularly Detective Billingy, the prosecution's primary witness, to testify in open court. Moreover, as Judge Pitman noted, petitioner gives no explanation of how the alternative he only now suggests would diminish the safety risk that originally justified closure. Mag. Rep. at 16.

█ Finally, under *Waller*'s forth prong, the trial court must make findings adequate to support closure. *Waller, supra*, 467 U.S. at 48, 104 S.Ct. 2210. While not extensive, the trial court's findings are sufficient to meet *Waller*'s fourth prong under the standards articulated in this Circuit. In a situation of a limited closure, "information gleaned" from the record will satisfy the fact-finding requirement. *See Woods v. Kuhlmann*, 977 F.2d 74, 77–78 (2d Cir.1992) ("information gleaned" from the record was "sufficient to support the partial, temporary closure of petitioner's trial"); *see also United States v. Farmer*, 32 F.3d 369, 371 (8th Cir.1994) ("[S]pecific findings by the district court are not necessary if we can glean sufficient support for a partial temporary closure from the record."). In the present case, as discussed above, testimony during the closure hearing was adequate to support closure

---

**6.** Petitioner argues that Detective Weathers corroborating testimony was "crucial" to the government's case because the jury ultimately convicted petitioner of the criminal sale charge, but not of the criminal possession charge. Such conclusion however, is unwarranted by the facts of this case because Detective Weathers had no first hand knowledge of either petitioner's sale or possession of crack cocaine. In any event, "a jury is free to render inconsistent verdicts or to employ relevant evidence in convicting on one count that it may seem to have rejected in acquitting on other counts." *United States v. Rowan, et al.*, 518 F.2d 685, 689 (6th Cir.1975), *cert. denied by Jackson v. U.S.*, 423 U.S. 949, 96 S.Ct. 368, 46 L.Ed.2d 284 (1975). Thus, the jury verdict itself affords no basis to conclude that Weathers' testimony was crucial.

under *Waller*'s first three prongs. In turn, such testimony necessitates a finding that *Waller*'s fact finding requirement has also been met.[7]

## CONCLUSION

In sum, the partial and temporary closure of petitioner's trial during collateral and duplicative testimony of Detective Weathers did not violate petitioner's right to a public trial under the United States Constitution. Accordingly, for the reasons set forth above, Bowden's petition for a writ of habeas corpus shall be and is hereby denied. The Clerk of the Court is directed to close the above-captioned action.

A certificate of appealability will issue.

It is **SO ORDERED.**

---

**7.** To the extent necessary, this Court agrees with Judge Pitman's alternative conclusion that any failure by the trial court judge to make specific findings of fact was a "good faith mistake," not warranting reversal under the law of this Circuit. Mag. Rep. at 21–23. Specifically,

> [i]f the remedy of a new trial without a showing of prejudice is intended to deter unjustified courtroom closures, then the necessity for that remedy should depend on the degree to which it 'could be charged

that the judge deliberately enforced secrecy in order to be free of the safeguards of the public's scrutiny.'

*Kuhlmann*, 142 F.3d at 540–41, *quoting Levine v. United States*, 362 U.S. 610, 619, 80 S.Ct. 1038, 4 L.Ed.2d 989 (1960). Therefore, even assuming arguendo that *Waller*'s fourth prong has not been met, given that petitioner's counsel made only perfunctory objections to closure, Tr. at 222, and that any mistakes were made in good faith, a new trial would be inappropriate.