**Leon CUMMINGS, Petitioner,**

v.

**Christopher ARTUZ, Superintendent Greenhaven Correctional Facility, Respondent.**

**No. 99Civ.11057(BSJ)(FM).**

United States District Court, S.D. New York.

Dec. 16, 2002.

Leon Cummings, Accord, New York, pro se.

Bruno V. Gioffre, Assist. Atty. Gen., New York, NY, for defendant.

## DECISION AND ORDER

MARRERO, District Judge.

Petitioner Leon Cummings ("Cummings"), seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Magistrate Judge Frank Maas issued a Report and Recommendation, dated November 12, 2002 (the "Report"), recommending that the petition be denied in all respects.[1] The Report is incorporated hereto as Attachment A. Cummings has interposed no

---

1. The Report is addressed to Judge Barbara S. Jones. This case was reassigned to this Court on November 25, 2002, after the Report had been submitted to Judge Jones.

objection to the Report. The deadline given by Magistrate Judge Maas for submission of covenants having passed, the Court now rules on the matter.

Cummings asserts that he was denied his constitutional rights to (1) a unanimous jury verdict because the trial court's jury instructions did not sufficiently relate the offenses described to the counts charged; (2) a fair trial due to several evidentiary errors; and (3) a public trial by reason of the trial court's closing the courtroom during the testimony of an undercover officer.

The Court has considered the three issues raised in Cummings's petition and Magistrate Judge Maas's analysis and conclusions with respect to each of them. The Court finds no meritorious basis in law to support Cummings's challenge to his conviction on any of the grounds he asserts. In examining the record and the law pertinent to this petition, the Court concludes that there is a sufficient basis in fact for the verdict and sentence reflected in the judgment entered against Cummings and that the principles and authorities relied upon by Magistrate Judge Maas in recommending denial of the petition are controlling and sufficient to dispose of each Cummings's arguments. Therefore, the Court accepts and adopts the Report in its entirety.

Accordingly, it is hereby

**ORDERED** that the writ is denied; and it is further

**ORDERED** that the petition is dismissed with prejudice.

The Clerk of Court is directed to close this case.

As Cummings has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). *See also United States v. Perez*, 129 F.3d 255, 259–60 (2d Cir.1997); *Lozada v. United States*, 107 F.3d 1011, 1014–16 (2d Cir.

1997). The Court certifies that, pursuant to 28 U.S.C. § 1915(a)(3), any appeal from this Order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

**SO ORDERED.**

## REPORT AND RECOMMENDATION TO THE HONORABLE BARBARA S. JONES

MAAS, United States Magistrate Judge.

I. *Introduction*

Petitioner Leon Cummings brings this *pro se* habeas corpus proceeding pursuant to 28 U.S.C. § 2254, challenging his conviction, following a jury trial in Supreme Court, New York County, on one count each of criminal possession of a controlled substance in the third degree, criminal sale of a controlled substance in the third degree, and criminal sale of a controlled substance in or near school grounds, in violation, respectively, of Sections 220.16(1), 220.39(1) and 220.44 of the New York Penal Law. (Pet.¶¶ 1, 4, 6). On June 17, 1996, Justice Ronald A. Zweibel sentenced Cummings to concurrent terms of five to ten years on each count. (*Id.* ¶¶ 1–3). In his petition, Cummings contends that he was denied the right to (a) a unanimous verdict because the jury instructions failed to specify which offense related to which count; (b) a fair trial due to a series of evidentiary errors; and (c) a public trial because the trial court improperly closed the courtroom during the testimony of an undercover officer. (*Id.* ¶ 12(A)-(C)). For the reasons that follow, the petition should be denied. Additionally, pursuant to 28 U.S.C. § 2253(c)(2), Cummings should be denied a certificate of appealability because he has failed to make a substantial showing of the denial of a constitutional right.

## II. *Background*

### A. *Relevant Facts*

Cummings' conviction arose out of a New York City Police Department undercover "buy-and-bust" operation. (*See* Tr. 237). The proof at trial established that, on January 10, 1996, as part of that operation, Detectives George Sandberg and Lucas Miller and Police Officer Charles McEvoy of the Manhattan South Downtown Narcotics District were working in the vicinity of First Avenue and 13th Street. (*Id.* at 237, 240, 314–16, 377, 379–80). At approximately 5 p.m., Officer McEvoy was on a nearby rooftop. (*Id.* at 315–16). Using binoculars, he observed a man—subsequently identified as John Iazetta—approach Cummings and engage in conversation. (*Id.* at 316–19). Officer McEvoy next saw Cummings reach into his pocket and hand Iazetta a "small, white package," that "looked like crack," receiving in return "a sum of United States currency." (*Id.* at 319–20). Detective Sandberg arrested Iazetta several minutes later and retrieved two vials of crack cocaine from Iazetta's pocket. (*Id.* at 380–81).

Shortly thereafter, Cummings was observed in the company of an individual later identified as Ben Faulkner. (*Id.* at 240, 324). Detective Miller, who was working undercover, approached the two men and asked to purchase some "white tops," which are vials of crack cocaine distinguished by the white color of their tops. (*Id.* at 237, 240–42). Following a brief conversation regarding quantity and price, Cummings and Detective Miller walked around the corner, where they met with a man subsequently identified as Raymond Prande. (*Id.* at 243–45). After Cummings indicated that Detective Miller wanted to buy "three," Prande handed the detective three packages, each of which contained two vials of crack cocaine, receiving in return $30 in prerecorded buy money. (*Id.* at 245–47). This transaction took place no more than 200 feet from a public elementary school. (*Id.* at 268). Following its consummation, a police back-up team arrested Cummings, Faulkner, and Prande. (*Id.* at 329, 383–84). A subsequent search led to the recovery of two vials of crack cocaine and the prerecorded buy money from Prande's person. (*Id.* at 384).

The indictment against Cummings named him in five counts. In Counts One and Three, Cummings was charged as an aider and abettor with criminal sale of a controlled substance in the third degree and criminal sale of a controlled substance near school grounds as a result of his role in Detective Miller's purchase of narcotics from Prande. (Aff. of Ass't Att'y Gen. Bruno V. Gioffre, Jr. ("Gioffre Aff."), sworn to on May 5, 2000, Exs. A at 3, B at 2). In Counts Two and Four, Cummings was charged as a principal with the same two crimes in connection with his sale of narcotics to Iazetta. (*Id.*). Finally, in Count Five, Cummings was charged as an aider and abettor with criminal possession of a controlled substance in the third degree in connection with the narcotics seized from Prande after the arrests. (*Id.*).

All of the witnesses in this case testified on June 3, 1996. (Tr. 210, 413). The following day, after brief deliberations, the jury found Cummings guilty on the two counts arising out of the sale of narcotics to Iazetta and the count relating to the narcotics seized from Prande. (*Id.* at 521, 527–30). Cummings was acquitted on the two remaining counts related to the sale of narcotics to Detective Miller. (*Id.* at 528–30).

On June 17, 1996, Cummings was sentenced as a predicate felon to concurrent indeterminate terms of five to ten years on

Counts Two, Four, and Five of the indictment. (Pet.¶¶ 2–3).

### B. *Alleged Errors*

#### 1. *Courtroom Closure*

Prior to trial, the prosecutor asked that the courtroom be closed during the testimony of Detective Miller, who was working undercover at the time of the buy-and-bust operation. Accordingly, the court conducted a hearing pursuant to *People v. Hinton*, 31 N.Y.2d 71, 334 N.Y.S.2d 885, 286 N.E.2d 265 (1972), to determine if the request was warranted. (Tr. 187–209). Detective Miller testified at the hearing that he had worked as an undercover in the vicinity of First Avenue and 13th Street approximately forty times since January 10, 1996, and was continuing to do so. (*Id.* at 189, 196). He noted that this activity had resulted in forty pending buy-and-bust cases, five of which involved ongoing investigations. (*Id.* at 201–02). Additionally, approximately twenty subjects had not been arrested and remained at large in connection with the pending cases. (*Id.* at 202–03).

Detective Miller testified further that, during the course of his undercover work, he had been threatened twice in the area near where Cummings was arrested. (*Id.* at 190). On one occasion, a man "pulled a Mach Ten submachine gun on [him]." (*Id.*). In the other instance, someone attempted to stab him. (*Id.*). In light of these incidents, he feared that his safety and that of his family would be compromised if he testified as a police officer in open court. (*Id.* at 193).

Detective Miller also testified that to protect his safety, the courtroom had been closed on all four prior occasions when he was called as a trial witness. (*Id.* at 191). Moreover, when he was called to testify, Detective Miller entered the courthouse through the judge's entrance in the rear. (*Id.* at 192). The detective conceded that

he had briefly been in a public corridor outside the courtroom while waiting to testify at the hearing, but noted that he intended to tell anyone who questioned his presence that he himself was a defendant in a criminal case. (*Id.* at 190–91, 198).

At the conclusion of the *Hinton* hearing, Justice Zweibel found Detective Miller's testimony regarding the threats that he faced to be "credible." (*Id.* at 208). Balancing the defendant's rights against the detective's need for safety, the Justice directed that the courtroom be closed during the officer's testimony. (*Id.*). Justice Zweibel also indicated, however, that he would entertain applications on a case-by-case basis from any of Cummings' relatives, or anyone else, who wished to be present during the detective's trial testimony. (*Id.*). Detective Miller also was required to testify (as he had in the past) using his own name and shield number. (*Id.*).

#### 2. *Expert and Background Testimony*

Cummings' second claim relates to a series of alleged errors at trial. More specifically, Cummings complains that (a) Detective Miller was permitted to give opinion testimony without being qualified as an expert; (b) conversely, Officer McEvoy and Detective Sandberg were qualified as experts but were impermissibly allowed to "bolster" Detective Miller's testimony; and (c) the trial court failed to give the jury proper limiting instructions regarding "background evidence or expert testimony." (Pet.¶ 12(B)).

The first witness for the People was Detective Miller, who began his testimony by describing his experience as a police officer and training in narcotics. (*Id.* at 231–34). Detective Miller then testified, over various defense objections, about the appearance of crack cocaine and the definitions of such terms as "hand-to-hand" and

"steerer." (*Id.* at 234–35). As he was describing the January 10th buy-and-bust operation, Detective Miller also testified about the manner in which crack is commonly sold and the definitions of such terms as "dimes" and "prerecorded buy money." (*Id.* at 242–43, 247).

Officer McEvoy and Detective Sandberg then testified about their roles in the buy-and-bust operation. (*Id.* at 314–18, 377–79). In addition, both witnesses gave general testimony about narcotics trafficking and undercover operations, during which they addressed many of the background matters that Detective Miller had covered in his testimony. (*Id.* at 310–14, 371–73, 376–77). Some of this testimony was received as expert testimony. (*See id.* at 313, 372–73).

At the close of all the testimony, the trial court gave the jurors a standard instruction that the testimony of a police officer should not be given any greater credibility than that of any other witness, nor should it be given any less credibility. (*Id.* at 483). Turning to the subject of expert witnesses, the court then reminded the jury that "one of the witnesses, Abdul Qureshi, [had] testified as an expert in the field of chemical analysis of controlled substances." (*Id.*). This reminder was followed by a charge concerning expert testimony, which did not specifically refer to any of the witnesses whose testimony the jurors had heard. (*Id.* at 483–84).

Following the trial court's charge, defense counsel took no exception to any of the jury instructions concerning the testimony of police officers or experts. (*Id.* at 513–18).

### 3. Jury Instructions

After instructing the jurors that they would be asked to consider five counts, the trial court set forth the statutory definition of each crime followed by a description of the elements that the People needed to prove beyond a reasonable doubt to establish Cummings' guilt. (*Id.* at 495–509). As noted above, Cummings contends that these instructions failed to ensure that the jurors reached a unanimous verdict on each count. (Pet.¶ 12(A)).

The instructions with respect to Counts One and Three, which related to Detective Miller's narcotics purchase from Prande, incorporated language expressly indicating the involvement of another person. (*Id.* at 496, 500–01). Thus, the trial court stated to the jury with respect to both crimes that the People had to prove that "on or about January 10, 1996, . . . the defendant acting *in concert with another person*" sold the six vials of crack cocaine received in evidence as "People's Exhibit 1." (*Id.* (emphasis added)).

Similarly, in its discussion of Counts Two and Four, the trial court referred to the applicable exhibit, "People's Exhibit Number 2," which consisted of the two vials of crack cocaine that Cummings sold directly to Iazetta. (*Id.* at 499, 503). Because this was a direct hand-to-hand sale, the court's instructions concerning these counts omitted any language suggesting the involvement of another person. (*Id.*).

Finally, in its discussion of Count Five, the trial court again used language indicating the involvement of another person. The instructions also referred to "People's Exhibit Number 3," which consisted of the two vials of crack cocaine found in Prande's pocket after his arrest. (*Id.* at 505).

### C. Subsequent Procedural History

Cummings appealed to the Appellate Division, First Department, raising the same grounds that he now asserts in his habeas petition. (*See* Gioffre Aff. Ex. A). The Appellate Division affirmed his conviction on April 7, 1998. *People v. Cummings,* 249 A.D.2d 38, 671 N.Y.S.2d 229, 230 (1st

Dep't 1998). In its decision, the Appellate Division observed that Cummings had "failed to preserve his claim that the court's jury instruction[s] failed to specify which count of the indictment referred to which drug transaction." *Id.* Although the court declined to review this claim "in the interest of justice," it noted that the claim would lack merit even if had been reached because the trial judge "sufficiently linked each count to a particular drug transaction by specifying the applicable exhibit," a method that it concluded did not create any confusion. *Id.* The Appellate Division further observed that the trial court's closure order was proper and not overbroad. *Id.* Finally, the Appellate Division held that the police officers' testimony concerning the practices of drug dealers was "appropriate" and that Cummings' objections to its receipt were meritless. *Id.*

On June 12, 1998, Cummings' application for leave to appeal the affirmance of his conviction to the New York Court of Appeals was summarily denied. *People v. Cummings*, 92 N.Y.2d 850, 677 N.Y.S.2d 80, 699 N.E.2d 440 (1998). Accordingly, his conviction became final on September 10, 1998, when the time period in which Cummings could petition the United States Supreme Court for a writ of certiorari expired.

■■■ Cummings' habeas petition is dated August 25, 1999, bears a September 24, 1999 postmark, and is stamped as having been received by the Pro Se Office of the Court on September 27, 1999. (Pet. at 1, 7). Although the Respondent contends that the petition is therefore untimely, (Resp't's Mem. at 7–8), former Chief Judge Griesa previously rejected this contention in an order dated November 4, 1999. (Docket No. 2). As Judge Griesa explained, Cummings' petition was originally received on August 30, 1999, but was returned to him a few days later "because he had failed to submit an in forma pau-

peris application or the filing fee of $5.00." (*Id.*). As Judge Griesa further noted, Cummings did not receive the returned petition until September 23, 1999, because he had been transferred in the interim to a new facility. (*Id.*). Given these circumstances, Judge Griesa concluded that the petition should be deemed filed "on the date [Cummings] signed it, August 25, 1999." (*Id.*). This determination constitutes the "law of the case." *See, e.g., Marfia v. T.C. Ziraat Bankasi, N.Y. Branch*, 100 F.3d 243, 251 (2d Cir.1996)("It goes without saying" that first district judge's ruling was the law of the case even after case was reassigned to second district judge.). Although the law of the case doctrine is not absolute, it "expresses a general reluctance, absent good cause, to reopen rulings that the parties relied upon." *Tischmann v. ITT/Sheraton Corp.*, 145 F.3d 561, 564 (2d Cir.1998)(citing *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 131 (2d Cir.1997)). Here, the Respondent has shown no reason to revisit Judge Griesa's prior determination. Accordingly, Cummings' petition must be treated as timely.

### III. *Discussion*

#### A. *Standard of Review*

A habeas corpus petition is not a vehicle to relitigate every issue previously determined in state court. *Herrera v. Collins*, 506 U.S. 390, 401, 113 S.Ct. 853, 861, 122 L.Ed.2d 203 (1993). Rather, a state prisoner seeking habeas relief under Section 2254 must show by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir.1997).

Section 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides, in part, that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was *contrary to,* or involved an *unreasonable application of,* clearly established Federal law, as determined by the Supreme Court of the United States.

28 U.S.C. § 2254(d)(1)(emphasis added).

■■■ As the Second Circuit noted in *Jones v. Stinson,* 229 F.3d 112, 119 (2d Cir.2000), the Supreme Court has "construed the amended statute so as to give independent meaning to 'contrary [to]' and 'unreasonable.'" "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). Under the "unreasonable application" clause, a federal habeas court should "ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* 529 U.S. at 409, 120 S.Ct. at 1521. This standard does not require that all reasonable jurists agree that the state court was wrong. *Id.,* 529 U.S. at 409–10, 120 S.Ct. at 1521–22. Rather, the standard "falls somewhere between 'merely erroneous and *unreasonable* to all reasonable jurists.'" *Stinson,* 229 F.3d at 119 (quoting *Francis S. v. Stone,* 221 F.3d 100, 109 (2d Cir.2000))(emphasis added). Section 2254(d)(1) only applies, however, "with respect to claims adjudicated on the merits in state court." *Williams,* 529 U.S. at 412, 120 S.Ct. at 1523.

Section 2254(d)(2) further authorizes the federal courts to grant a habeas writ when a claim considered on the merits in state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

■■■ "If, after carefully weighing all the reasons for accepting a state court's judgment, a federal court is convinced that a prisoner's custody . . . violates the Constitution, that independent judgment should prevail." *Williams,* 529 U.S. at 389, 120 S.Ct. at 1511. As discussed below, however, Cummings has failed to show that his conviction resulted from such constitutionally infirm proceedings in state court, and he is therefore not entitled to federal habeas relief.

### B. *Unanimous Verdict Claim*

### 1. *Procedural Default*

■■■ Under settled Supreme Court precedent, a federal court may not consider an issue of federal law raised in a state prisoner's petition for a writ of habeas corpus if the state court's prior denial of that claim rests on an adequate and independent state ground. *See, e.g., Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989); *Wainwright v. Sykes,* 433 U.S. 72, 81, 97 S.Ct. 2497, 2503–04, 53 L.Ed.2d 594 (1977). A finding of procedural default qualifies as such an adequate and independent state ground, *Harris,* 489 U.S. at 262, 109 S.Ct. at 1043, "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or . . . that failure to consider the claims will result in a fundamental miscarriage of justice." *Glenn v. Bartlett,* 98 F.3d 721, 724 (2d Cir.1996)(quoting *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991));

accord *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir.2000).

To demonstrate cause, a petitioner must adduce "some objective factor external to the defense" which explains why he did not raise the claim previously. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986); *Gonzalez v. Sullivan*, 934 F.2d 419, 422 (2d Cir.1991)(quoting *Murray* ). These factors include: (1) interference by government officials making compliance impracticable; (2) situations in which the factual or legal basis for a claim was not reasonably available to counsel; and (3) ineffective assistance of counsel. *See Murray*, 477 U.S. at 488, 106 S.Ct. at 2645; *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir.1994). A showing of prejudice requires a petitioner to demonstrate that the failure to raise the claim previously had a substantial injurious effect on his case such that he was denied fundamental fairness. *Reyes v. New York*, 1999 WL 1059961, at *2 (S.D.N.Y. Nov.22, 1999)(Scheindlin, J.). Finally, to establish a fundamental miscarriage of justice, a petitioner must demonstrate that he is "actually innocent." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir.2001).

Here, the Appellate Division held that Cummings had not preserved his objection that the court's jury instructions failed to specify which count of the indictment related to which drug transaction. *Cummings*, 249 A.D.2d at 38, 671 N.Y.S.2d at 230. Such a failure to comply with New York States's contemporaneous objection rule, N.Y.Crim. Proc. Law § 470.05(2), has been held to be an adequate and independent state procedural law ground for the denial of federal habeas review. *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990); *Taylor v. Harris*, 640 F.2d 1, 2 (2d Cir.1981). Moreover, that bar applies even if the state court also rules in the alternative, as the Appellate Division did

here, on the merits of the federal claim. *See Glenn*, 98 F.3d at 724; *Velasquez*, 898 F.2d at 9.

Accordingly, because Cummings has established neither cause for his procedural default nor that he is actually innocent, this Court lacks jurisdiction to entertain this aspect of Cummings' petition.

### 2. *Merits*

Moreover, Cummings' unanimous verdict claim would have to be denied even if this Court were able to consider it. To prevail on a jury charge claim, a habeas petitioner must show that he was deprived of a constitutional right. *Jackson v. Keane*, 1994 WL 281831, at *4 (S.D.N.Y. June 23, 1994)(Sand, J.)(citing *United States ex rel. Stanbridge v. Zelker*, 514 F.2d 45, 50 (2d Cir.1975)). In resolving that issue, "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). The appropriate question to ask is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or universally condemned." *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1737, 52 L.Ed.2d 203 (1977)(quoting *Cupp* )(internal quotation marks omitted). A petitioner is not entitled to relief unless "there is a reasonable likelihood" that the jury misapplied the court's instructions in way that deprived him of due process. *Jones v. United States*, 527 U.S. 373, 390, 119 S.Ct. 2090, 2102–03, 144 L.Ed.2d 370 (1999).

As the trial transcript reflects, the evidence in this case involved a handful of transactions occurring over a brief period of time and was sufficiently straightfor-

ward that it could be presented to the jury during one trial day. (*See* Tr. 210, 413). This alone suggests that the jury did not have any difficulty distinguishing among the three narcotics sales that it was asked to consider.

While the straightforward nature of the evidence and charges is alone sufficient to defeat Cummings' claim, the trial court's jury instructions in this case were not defective. Rather, the instructions expressly linked each count to a particular transaction by referring to the applicable narcotics exhibit and explaining whether Cummings was charged as an aider and abettor or as a principal. In light of these instructions, there plainly is no realistic possibility that the jury failed to consider the evidence with respect to each count separately in reaching its unanimous verdict. Indeed, if confusion had reigned, as Cummings suggests, the jury presumably would not have acquitted him on the two related counts arising out of Detective Miller's alleged purchase from him.[1]

In sum, as the Appellate Division properly concluded, Cummings' contentions concerning the jury charge do not establish any error—much less error of constitutional magnitude.[2]

### C. *Fair Trial Claim*

Cummings next asserts that he was deprived of his due process right to a fair trial through several evidentiary errors. (Pet. at ¶ 12(B)). Generally speaking, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991), because "rulings by state trial courts on evidentiary issues, even if erroneous, do not rise to the level of constitutional violation." *Copes v. Schriver*, 1997 WL 659096, at *3 (S.D.N.Y. Oct.22, 1997) (Koeltl, J.); *accord Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir.1983). To prevail on his due process claim, Cummings consequently must show that the evidentiary errors are "of constitutional dimension," such that they deprived him of "fundamental fairness." *Rosario v. Kuhlman*, 839 F.2d 918, 924 (2d Cir.1988). For an evidentiary error to rise to this level, it must have had a " 'substantial and injurious effect or influence in determining the jury's verdict.' " *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)). The evidence "must have

---

1. The cases cited by Cummings in his reply brief are inapplicable since they involved instructions that improperly failed to differentiate among the charges that the jury was asked to consider. *See People v. Payne*, 241 A.D.2d 466, 467, 660 N.Y.S.2d 147, 148 (2d Dep't 1997)(supplemental instructions in assault case improperly advised jury that "all three injuries were part of the charges without differentiating between any of the three counts"); *People v. Archer*, 238 A.D.2d 183, 656 N.Y.S.2d 237, 238 (1st Dep't 1997)(trial court "failed to assign specific gun to specific count"); *People v. Jackson*, 174 A.D.2d 444, 445, 572 N.Y.S.2d 891, 892 (1st Dep't 1991) ("Because of the court's instructions ... as to accessorial criminal liability, any juror could have voted appellant guilty based on his pos-

session of any of the [four] weapons mentioned at trial."); *People v. Scott*, 159 A.D.2d 975, 976, 552 N.Y.S.2d 764, 765 (4th Dep't 1990)(jury could have convicted without being unanimous as to which of two alternative theories applied).

2. Liberally construed, Cummings' petition can also be read to incorporate his appellate counsel's contention that the trial court erred by failing to marshal the evidence with respect to each charge. (*See* Gioffre Aff. Ex. A at 4, 11). Suffice it to say, the United States Constitution imposes no such obligation, particularly in a trial of this brevity and simplicity. *See United States v. Owens*, 263 F.2d 720, 723 (2d Cir.1959); *United States v. Cohen*, 145 F.2d 82, 92 (2d Cir.1944).

been 'sufficiently material to provide a basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" *Dunnigan v. Keane,* 137 F.3d 117, 125 (2d Cir.1998)(quoting *Johnson v. Ross,* 955 F.2d 178, 181 (2d Cir.1992)).

 Cummings' first contention is that the trial court committed error of constitutional dimensions by allowing Detective Miller to testify about general street-level narcotics trafficking without first qualifying him as an expert. Under both federal and New York law, however, a court is not required to declare or certify a witness as an expert before permitting the witness to give opinion testimony. *See United States v. Bartley,* 855 F.2d 547, 552 (8th Cir.1988) ("Although it is for the court to determine whether a witness is qualified to testify as an expert, there is no requirement that the court specifically make that finding in open court upon proffer of the offering party."); *People v. Leung,* 272 A.D.2d 88, 89, 712 N.Y.S.2d 88 (1st Dep't 2000)(explaining that court is "not required to formally declare or certify the witness to be an expert"). At trial, it was established that Detective Miller possessed the necessary training and experience to testify knowledgeably about the terminology and practices of both narcotics traffickers and narcotics investigators. As such, he was unquestionably qualified to set the stage for his substantive testimony by providing the background information—such as the definitions of narcotics terms—to which Cummings objects. *See, e.g., United States v. Simmons,* 923 F.2d 934, 946 (2d Cir.1991)(quoting *United States v. Kusek,* 844 F.2d 942, 949 (2d Cir.1988))("Expert testimony in the field of narcotics operations is often helpful to jurors 'who [are] likely unfamiliar with words and phrases used by narcotics dealers to camouflage their activities.'"); *People v. Lacend,* 216 A.D.2d 112, 113, 628 N.Y.S.2d 96, 97 (1st Dep't 1995)(citing *People v.Tevaha,*

204 A.D.2d 92, 93, 611 N.Y.S.2d 179, 180 (1st Dep't 1994))("[D]espite the fact that the officer in question was not formally qualified as an expert witness, his testimony demonstrated that he had sufficient experience to qualify as such in connection with street level drug operations."). Moreover, even if the admission of Detective Miller's expert opinions were shown to be erroneous, it did not directly implicate Cummings and, therefore, could not have deprived him of a fundamentally fair trial.

 Cummings also contends that a portion of the testimony of Officer McEvoy and Detective Sandberg, which the trial court formally accepted as expert testimony, was cumulative and improperly "bolstered" Detective Miller's background testimony. Here again, because it related to background matters, the allegedly improper testimony of these witnesses in no way established that Cummings himself was engaged in narcotics trafficking. Furthermore, "bolstering" claims typically arise under New York law when one witness confirms an identification previously made by another witness. *See Snow v. Reid,* 619 F.Supp. 579, 582 (S.D.N.Y.1985)("The concept of 'bolstering' ... [is] derived from *People v. Trowbridge,* 305 N.Y. 471, 113 N.E.2d 841 (1953), which holds that it is error to permit an identification made by one witness to be corroborated by the testimony of another witness who merely testifies that the identification did occur."). Even if this state law proscription could be stretched to apply to the expert police testimony here, it is clear that the alleged "bolstering" would not warrant the issuance of an extraordinary writ since there is no reasonable likelihood that the evidence affected the outcome of Cummings' trial. *See Diaz v. Greiner,* 110 F.Supp.2d 225, 234 (S.D.N.Y.2000)(collecting cases in which courts have declined to grant habeas relief on the ground of "bolstering").

Cummings' final evidentiary contention springs from the earlier two: he argues that the trial court erred by failing to instruct the jury adequately about background evidence and expert testimony. As the Respondent correctly observes, this objection is unpreserved since Cummings neither proposed any curative instructions nor objected to their absence at trial. (*See* Resp't's Mem. at 16, 20). In any event, even if the Court could consider Cummings' contentions concerning the trial judge's instructions, it is clear that the background and expert testimony in this case in no way suggested that Cummings was involved in the three drug transactions with which he was charged. Accordingly, even if Cummings were able to show that the jury was not instructed entirely properly, there is no "reasonable likelihood" that a more detailed or different set of instructions would have led to a different verdict. Cummings consequently has not shown, as he must, that the trial court's instructions were so defective that they deprived him of due process.

D. *Right to a Public Trial*

Cummings' final claim is that his Sixth Amendment right to a public trial was violated by the closure of the courtroom during Detective Miller's testimony. (Pet. ¶ 12(C)).

In *Waller v. Georgia,* 467 U.S. 39, 48, 104 S.Ct. 2210, 2216, 81 L.Ed.2d 31 (1984), the Supreme Court held that the closure of a courtroom violates a defendant's Sixth Amendment right to a public trial unless (1) the party seeking to close the hearing advances an overriding interest that is likely to be prejudiced, (2) the closure is no broader than necessary to protect that interest, (3) the trial court considers reasonable alternatives to closing the proceedings, and (4) the decision to close the courtroom is supported by adequate factual findings. In his papers, Cummings essentially contends that the State failed to meet the first of these requirements. For example, he notes that Detective Miller waited outside the courtroom in public view before testifying at the hearing, gave his full name during his testimony, and was unable to show that he had been threatened by Cummings or any residents of the neighborhood where the arrests occurred. (Pet.¶ 12(C)).

Over the years, courts have differed as to the precise degree of interest that must be shown to justify the closure of a courtroom, using such terms as "compelling," "overriding," and a "substantial reason" to describe the requisite quantum of proof. *See Ayala v. Speckard,* 131 F.3d 62, 69–70 (2d Cir.1997)(*en banc* ). Whatever the applicable standard may be, the safety of an undercover police officer unquestionably rises to the requisite level. *See Brown v. Artuz,* 283 F.3d 492, 501 (2d Cir.2002). Accordingly, Justice Zweibel's decision to close the courtroom was not "contrary to" clearly established federal law. Moreover, the evidence that Cummings recites in an effort to undercut Detective Miller's testimony is, at best, of marginal relevance. For example, although the detective waited outside the courtroom before the hearing, he testified that he intended to tell anyone who questioned his presence that he himself was a defendant. (Tr. 190–91). Also, the fact that Cummings and his associates may not have posed a threat, even if established, by no means suggests that other persons engaged in narcotics trafficking in the area of First Avenue and 13th Street would not have done so if permitted to witness Detective Miller's testimony. This alone was a sufficient reason to close the courtroom during Detective Miller's testimony. *See Bowden v. Keane,* 85 F.Supp.2d 246, 250 (S.D.N.Y.2000).

Once the first prong of the *Waller* test has been satisfied, a courtroom clo-

sure is permissible so long as the movant is able to show that there is a reasonable relationship between the "extent of the closure" and the " 'gravity' of the interest that assertedly justifies the closure." *See Bowden v. Keane,* 237 F.3d 125, 129 (2d Cir.2001). When the scope of the closure order is narrow, this burden "is not a 'heavy' one." *Id.* (quoting *Brown v. Kuhlmann,* 142 F.3d 529, 538 (2d Cir.1998)). Additionally, when the closure is less than complete, the trial judge need not consider further alternatives *sua sponte. Id.* at 131 (citing *Ayala,* 131 F.3d at 71).

Here, the courtroom was closed for the testimony of only one witness, the trial judge offered to allow prescreened spectators—including Cummings' relatives—to enter the courtroom during that testimony, there is no indication that the transcript of Detective Miller's testimony was sealed, and the defense did not suggest any less restrictive alternatives. Given the very narrow scope of the closure order, Cummings consequently has not shown that Justice Zweibel's order was an unreasonable application of *Waller,* as he must in order to prevail.

IV. *Conclusion*

For the foregoing reasons, Cummings' petition should be denied. Furthermore, because Cummings has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253(c)(2), a certificate of appealability should not be issued.

V. *Notice of Procedure for Filing of Objections to this Report and Recommendation*

The parties are hereby directed that if they have any objections to this Report and Recommendation, they must, within ten (10) days from today, make them in writing, file them with the Clerk of the Court, and send copies to the chambers of the Honorable Barbara S. Jones, United States District Judge, at the United States Courthouse, 40 Centre Street, New York, N.Y. 10007, to the chambers of the undersigned, at the United States Courthouse, 500 Pearl Street, New York, N.Y. 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Jones. Any failure to file timely objections will result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72(b).

November 12, 2002.