**Vernon LONG, Petitioner,**

v.

**DONNELLY, Warden of Wende C.F., Respondent.**

No. 03 Civ. 4837(VM).

United States District Court, S.D. New York.

Sept. 13, 2004.

Vernon Long, Romulus, NY, Pro se.

Nicole Beder, District Attorney, New York County, New York City, for Respondent.

### DECISION AND AMENDED ORDER

MARRERO, District Judge.

*Pro se* petitioner Vernon Long ("Long") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("§ 2254")

challenging his conviction in New York State Supreme Court, New York County (the "trial court") of five counts of robbery in the first degree, in violation of New York Penal Law ("NYPL") § 160.15(4), and one count of attempted robbery in the first degree, pursuant to NYPL §§ 110.00/160.15(4). The trial court imposed a sentence of imprisonment in two consecutive sentences of 20 years to life to run concurrently with three sentences of 20 years to life and one sentence of 16 years to life. Long's habeas petition alleges that his federal constitutional rights were violated during different portions of his criminal proceedings. Respondent, Superintendent of New York State's Wende Correctional Facility where Long is in custody (the "State"), interposes both procedural and substantive arguments in opposition to Long's petition. By Decision and Order dated August 19, 2004, the Court denied Long's petition and indicated that its findings, reasoning, and conclusions would be set forth in a separate Decision and Order. Accordingly, for the reasons discussed below, Long's petition is denied in its entirety.

## I. *BACKGROUND*

### A. *FACTUAL SUMMARY AND PROCEDURAL HISTORY*[1]

From October 1997 through January 1998, Long robbed or attempted to rob five different businesses in midtown Manhattan in six separate criminal acts, and stole between $300 and $1,300 during each robbery. Long performed his robberies by either verbally demanding the money from the store employee and/or displaying a written demand on a note, and maneuvering his hand in his pocket to give the impression that he possessed a gun. Police officers identified Long as a suspect in the robberies after the officers matched Long's fingerprints to one of the robbery notes and after two store employees identified Long in a photograph as the perpetrator.

On January 12, 1998, police officers arrested Long at his residence after Long robbed a store of approximately $300. The officers knocked on Long's door and when Long opened it, they ordered him to step into the hallway and drop to his knees. During the arrest, the police found $191 and two glassines of heroin in Long's possession. Although the arresting officers did not have a warrant to search the apartment, Long's girlfriend, who lived there with Long, consented to the search. In the apartment, the officers recovered two jackets, a New York Mets cap, and a firearm.[2] After the arrest, the police conducted a lineup where all but one of the five witnesses identified Long as the perpetrator. Two of the witnesses, however, identified Long only after having heard the lineup participants speak a scripted phrase that the perpetrator used during particular robberies.

Long was subsequently charged with five counts of robbery in the first degree, one count of attempted robbery in the first degree, and one count of criminal possession of a weapon in the third degree. During a combined hearing, the trial court

1. The following factual and procedural summary is derived primarily from the following documents: Petition under 28 U.S.C. § 2254, *Long v. Donnelly*, No. 03 Civ. 4837, dated May 12, 2003 ("Petition"); Memorandum of Law In Opposition to Petition for a Writ of Habeas Corpus, dated November 2003 ("Gov't Mem."); and Answer and Appendix in Opposition to Petition for a Writ of Habeas Corpus, dated Nov. 19, 2003 ("Opp."). Except where specifically referenced, no further citation to these sources will be made.

2. Some of the witnesses to the robberies described the perpetrator as wearing a New York Mets cap and a jacket that matched the ones found in Long's apartment.

denied Long's motion to suppress the money and heroin he possessed during his arrest, and the items recovered during the apartment search. On June 8, 1998, a jury found Long guilty of the robbery and attempted robbery counts. The trial court sentenced Long as a violent felony offender pursuant to NYPL § 70.08 ("NYPL § 70.08") to two consecutive sentences of 20 years to life imprisonment, to run concurrently with three sentences of 20 years to life and one sentence of 16 years to life.

On direct appeal to the New York Supreme Court Appellate Division, First Department (the "Appellate Division"), Long argued that: (1) the trial court erred in denying his suppression motion because the heroin and money found on his person after his arrest amounted to a violation of *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), and that the *Payton* violation also tainted the subsequent lineup identification;[3] (2) the evidence found in his home was seized without the proper consent from his girlfriend; (3) the State failed to meet its burden of producing evidence at the *Wade* hearing[4] that the identification procedures had not been unduly suggestive; (4) the admission of evidence that he possessed two glassine vials of heroin at the time of his arrest deprived him of a fair trial; and (5) his sentence as a persistent violent felony offender violated the rule pronounced by the United States Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). (*See* Opp. at Ex. A.) On January 22, 2002, the Appellate Division held that while Long's arrest had amounted to a *Payton* violation, the lineup

identifications were sufficiently attenuated from, and therefore not tainted by, the arrest. *See People v. Long*, 290 A.D.2d 332, 737 N.Y.S.2d 65, 66 (1st Dep't 2002). In affirming Long's conviction, the Appellate Division considered all of Long's arguments on the merits and affirmed all of the trial court's rulings. *See id.*, 737 N.Y.S.2d at 66–67.

On April 11, 2002, the Appellate Division denied Long's application for re-argument. *See People v. Long*, No. M–924, 2002 N.Y.App. Div. LEXIS 3760 (App. Div. 1st Dep't Apr. 11, 2002). On May 20, 2002, the New York Court of Appeals denied Long's application for leave to appeal. *See People v. Long*, 98 N.Y.2d 653, 745 N.Y.S.2d 511, 772 N.E.2d 614 (2002).

### B. *LONG'S HABEAS CORPUS PETITION*

Long asserts four claims in the instant petition. First, he contends that the money and heroin he possessed at the time of his arrest should have been suppressed due to the *Payton* violation. Long further claims that the subsequent police lineup should also have been suppressed as tainted by his arrest in violation of *Payton*. He argues that had the money and heroin been suppressed, the State would not have been able to explain the absence of the full amount of the proceeds of the most recent robbery committed approximately an hour before his arrest, nor introduce the heroin as evidence of his motive in perpetrating the robberies. Furthermore, Long maintains that had the lineup been suppressed, the only physical evidence linking him to

---

**3.** In *Payton,* the United State Supreme Court held that the Fourth Amendment prohibits law enforcement officers from entering a home to conduct a search or a seizure unless either the law enforcement officers possess a warrant based on probable cause or there exist exigent circumstances. *See Payton,* 445 U.S. at 583, 100 S.Ct. 1371.

**4.** A pre-trial *Wade* hearing is held to determine whether a pre-trial identification of a defendant has an independent basis of reliability and is thus admissible at trial to determine the guilt or innocence of the accused. *See generally United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

any of these crimes would have been his fingerprint on the note and the property seized from his apartment. The State counters that a state court's denial of a petitioner's motion to suppress physical evidence is not a cognizable claim for federal habeas corpus relief except in rare circumstances that are not applicable here.

Second, Long claims that he was denied his due process rights by the trial court's admission of the voice identification evidence. He alleges that the State failed to present any evidence whatsoever at the pre-trial *Wade* hearing that a voice identification procedure had occurred, and thus, the State had failed to meet its burden of showing that the identification was not unduly suggestive. The State responds that Long was not denied any federal constitutional right as a result of the lineup identification because the federal Constitution does not require compliance with New York's procedural rules. The State contends that in any event, the trial court found as a matter of fact that the lineup and voice identification were fairly conducted and that the police officers maintained the integrity of the lineup.

Third, Long claims deprivation of his due process right to a fair trial arising from the trial court's admission of allegedly irrelevant and prejudicial evidence concerning his uncharged heroin possession at the time of arrest. Long contends that such evidence was not relevant to prove any element of the crimes charged. Moreover, Long argues, although this evidence arguably demonstrates motive for committing the robberies, the prejudicial impact outweighs its probative value because the jury might use such evidence to condemn Long without fair consideration of the actual charges against him. The State retorts that a state trial court's evidentiary ruling is not a federal constitutional issue where such evidence is relevant to an issue in the case. In this case, the State argues,

the heroin was introduced into evidence only to explain the discrepancy between the $300 Long had stolen from a store about an hour prior to his arrest and the $191 in his pocket at the time of the arrest, and to prove drug addiction as a motive for the robberies.

Finally, Long claims that the consecutive sentences of 20 years to life imprisonment as a persistent violent felony offender pursuant to NYPL § 70.08 violates his right to notice of the charges against him, to a jury trial, and due process of law. According to Long, the enhanced sentence was premised upon the existence of prior convictions, where the existence of the prior convictions was neither submitted to a jury nor contained in an indictment. Thus, Long contends that NYPL § 70.08 violates the rule announced in *Apprendi*, and consequently infringes upon his rights under the Sixth and Fourteenth Amendments to the United States Constitution.

The State responds that this claim is procedurally barred from habeas review by a federal court, and thus forfeited, because the trial court relied on an independent and adequate state ground to dismiss Long's argument. The State further argues that NYPL § 70.08 is not unconstitutional because *Apprendi* explicitly carves out an exception where an enhanced sentence is based solely upon the finding of prior convictions, as is the case here.

## II. *DISCUSSION*

### A. *GENERAL PRINCIPLES FOR HABEAS CORPUS REVIEW*

■ A petitioner in custody pursuant to a judgment of a state trial court is entitled to habeas relief only if he can show that his detention violates the United States Constitution or federal law or treaties of the United States. *See* 28 U.S.C. § 2254(a). The purpose of federal habeas review of state court convictions is to "assure that when a person is detained unlaw-

fully or in violation of his constitutional rights he will be afforded an independent determination by a federal court of the legality of his detention, even though the issue may already have been decided on the merits by a state tribunal." *United States ex rel. Radich v. Criminal Court of New York*, 459 F.2d 745, 748 (2d Cir.1972).

### B. STANDARD OF REVIEW

Pursuant to the various sub-sections of § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, this Court's review is guided by certain restrictions on the nature and extent of review that a federal court can conduct in considering a habeas petition. Under § 2254, if a state court adjudicates a petitioner's federal claim on the merits, a federal court on habeas corpus review must defer to the state court's determination of that claim unless such adjudication resulted in a decision that was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court adjudicates a petitioner's federal claim "on the merits," and thus triggers the highly-deferential AEDPA standard of review, when it: (1) disposes of the claim on the merits; and (2) reduces its disposition to judgment. *See Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir.2001). In so doing, the state court need not explicitly refer to either the particular federal claim or to any federal case law. *See id.* The only requirement is that the claim be finally resolved, with res judicata effect, on substantive rather than procedural grounds. *See id.* at 311.

If the state court's adjudication of a petitioner's federal claim is not based on the merits—for example, when the decision rests solely on procedural grounds—the state court's decision on that claim is entitled to no deference. Instead, the federal court must apply a pre-AEDPA *de novo* review to the state court's disposition of the federal claim. *See Cotto v. Herbert*, 331 F.3d 217, 230 (2d Cir.2003) (citing *Aparicio v. Artuz*, 269 F.3d 78, 93 (2d Cir.2001)).

### C. FACTUAL DETERMINATIONS BY THE STATE

██ Under § 2254, factual determinations made by the state court are presumed to be correct, and the petitioner carries the burden to rebut this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Consequently, this Court presumes that the factual findings of the New York courts made in connection with Long's conviction are correct and will not set aside those findings unless "the material facts were not adequately developed" or the factual determinations are not fairly supported by the record. *Smith v. Mann*, 173 F.3d 73, 76 (2d Cir.1999).

### D. APPLICATION

At the outset, the Court notes that Long raised each of the four claims he presents in the instant petition to the Appellate Division on direct appeal and that the Appellate Division denied each claim on substantive grounds. *See Long*, 737 N.Y.S.2d at 66–67. Thus, this Court may apply the highly-deferential AEDPA standard of review applicable to claims that have been finally resolved on the merits. On this basis alone, denial of Long's petition is warranted. But even under *de novo* review, the Court is persuaded that Long's claims are meritless.

#### 1. Suppression of Physical Evidence

Long argues that the trial court's failure to suppress the heroin and money found in

his possession at the time of his arrest violated his Fourth Amendment right to a full and fair trial. The Court disagrees.

 A federal court's ability to review Fourth Amendment claims in habeas corpus petitions is severely limited. Indeed, it is axiomatic that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell,* 428 U.S. 465, 482, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). A state prisoner is denied the opportunity for full and fair litigation of his Fourth Amendment claims in two instances: "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley,* 975 F.2d 67, 70 (2d Cir.1992) (citing *Gates v. Henderson,* 568 F.2d 830, 840 (2d Cir.1977)).

The Second Circuit has repeatedly "approved New York's procedure for litigating Fourth Amendment claims ... as being facially adequate." *Capellan,* 975 F.2d at 70 n. 1; *see also Grey v. Hoke,* 933 F.2d 117, 121 (2d Cir.1991); *McPhail v. Warden, Attica Corr. Facility,* 707 F.2d 67, 69 (2d Cir.1983). In this manner, the Second Circuit has effectively rejected the first method of demonstrating the denial of full and fair litigation of a Fourth Amendment claim at the New York State court level. Thus, in order to succeed on his claim, Long must be able to point to an unconscionable breakdown in the application of state procedural laws by the state courts. The Court finds that Long has not provided such an exposition.

 The record reflects that the trial court afforded Long an evidentiary suppression hearing concerning the money and heroin found on his person at the time of arrest and subsequently denied his motion to suppress this evidence. Long argued this claim before the Appellate Division, which summarily affirmed the trial court. *See Long,* 737 N.Y.S.2d at 66 ("Defendant's suppression motion was properly denied."). Following a denial for re-argument, Long unsuccessfully sought leave to appeal to the New York Court of Appeals. Thus, despite having actually utilized the facially-valid state procedural mechanism to its maximum possible extent, Long now argues to this Court that the process exhibited an unconscionable breakdown due to the Appellate Division's failure to initially provide an *explicit* ruling on the claim.[5] The Court disagrees.

---

5. Within this first claim, Long continues to insist that the *Payton* violation tainted the subsequent police lineup and identification, and thus claims a denial of his right to a full and fair litigation because the lineup evidence was not suppressed. Such a contention, however, directly contradicts the explicit findings of the Appellate Division, which held that "the lineup identifications ... were sufficiently attenuated from, and were not tainted by the warrantless arrest." *Long,* 737 N.Y.S.2d at 66. Thus, Long implicitly asks this Court to rule directly against the results reached by a state court. As is well settled, however, "[a] federal court 'ha[s] no authority to review the state record and grant the writ simply because [it] disagrees with the result reached by the state courts' on a Fourth Amendment issue." *Hall v. Griener,* 00 Civ. 5517, 2004 WL 350759, at *3, (S.D.N.Y. Feb.24, 2004) (quoting *Gates v. Henderson,* 568 F.2d 830, 840 (2d Cir.1977)). It is the state court's corrective procedures themselves and any unconscionable breakdown within them, and not the reasonable outcomes reached by the courts employing them, that is relevant on federal habeas re-

■ Once the federal habeas court has determined that the "petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the [state] court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief." *Graham v. Costello*, 299 F.3d 129, 134 (2d Cir.2002). Long's request for re-argument to the Appellate Division is a clear example of the procedural opportunity alluded to by the *Graham* court, and the Appellate Division's denial of his request effectively and conclusively persuades this Court that it lacks any basis to offer Long federal habeas relief on this claim. Furthermore, "the mere fact that the Appellate Division adhered to its original outcome without comment ... does not mean that the Appellate Division failed to conduct a reasoned method of inquiry into relevant questions of fact and law." *Capellan*, 975 F.2d at 71 (internal quotations and citations omitted). The summary denial on the merits by the Appellate Division was certainly not the sort of "unconscionable breakdown" that the Second Circuit in *Capellan* sought to guard against in the state's procedural process. Rather, an "unconscionable breakdown in the state's process must be one that calls into serious question whether a conviction is obtained pursuant to those fundamental notions of due process that are at the heart of a civilized society." *Cappiello v. Hoke*, 698 F.Supp. 1042, 1050 (E.D.N.Y.), *aff'd* 852 F.2d 59 (2d Cir.1988). Such is not the case here.

2. *Voice Identification Evidence*

Next, Long argues that he was denied his due process rights when the trial court improperly admitted the voice identification evidence even though the State failed to proffer any evidence at the pre-trial *Wade* hearing that the police had utilized the proper voice identification procedure in the course of the police lineup.

■ An evaluation of the constitutional permissibility of in-court identification testimony based on out-of-court procedures involves the application of a two-step inquiry. *See Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). First, a court must determine whether the identification procedure was impermissibly suggestive and if so, whether it was so suggestive as to raise "a very substantial likelihood of irreparable misidentification." *Id.* at 198, 93 S.Ct. 375; *see also United States v. Wong*, 40 F.3d 1347, 1359 (2d Cir.1994). Second, even if such pre-trial procedures are found to be unduly suggestive, a court may nonetheless admit in-court identification testimony if it determines the evidence to be independently reliable. *See id.*

■ Where "impermissibly suggestive procedures are not employed, 'independent reliability is not a constitutionally required condition of admissibility, and the reliability of the identification is simply a question for the jury.'" *Wong*, 40 F.3d at 1359 (quoting *Jarrett v. Headley*, 802 F.2d 34, 42 (2d Cir.1986)). On such occasions, "questions as to the reliability of a proposed in-court identification affect only the identification's weight, not its admissibility." *United States v. Matthews*, 20 F.3d 538, 547 (2d Cir.1994).

■ On the other hand, "where the circumstances of either a pretrial or an at-trial identification are suggestive, reliability is the linchpin for determining admissibility." *Id.* Reliability is analyzed by the court in terms of the "totality of the circumstances." *Id.* (quoting *United States*

---

view. *See Capellan*, 975 F.2d at 70. Thus, Long's claim in his habeas petition that the

*Payton* violation tainted the police lineup is meritless.

*v. Archibald,* 734 F.2d 938, 942 (2d Cir. 1984)) (internal quotations omitted). Factors to be considered include: (1) the opportunity of the witness to view the perpetrator at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the perpetrator; (4) the degree of certainty exhibited by the witness at the confrontation; and (5) the elapsed time between the occurrence of the crime and the confrontation. *See Manson v. Brathwaite,* 432 U.S. 98, 114–16, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). In this manner, a federal court considers the likelihood of misidentification caused by the suggestive procedure "to determine if they would sufficiently taint the trial so as to deprive the defendant of due process." *Dunnigan v. Keane,* 137 F.3d 117, 128 (2d Cir.1998) (quoting *United States v. Bouthot,* 878 F.2d 1506, 1516 (1st Cir.1989)) (internal quotations omitted).

 Applying these principles, the Court is not persuaded that the voice identification procedure employed by the police in this case was unduly suggestive, and even if it had been, the Court finds that the procedure was independently reliable. Under § 2254, the Court must presume the correctness of the trial court's factual findings supporting its determination that the police adequately maintained the integrity and fairness of the voice identification exercise from beginning to end. *See* 28 U.S.C. § 2254(d)(2), (e)(1). In an unpublished written Decision & Order dated June 1, 1998, the trial court found that each witness viewed the lineup in isolation; each witness was taken to a separate room as they waited; the "fillers" in the lineup were sufficiently similar; and each lineup

participant was instructed to repeat the same scripted phrase. *See People v. Long,* Ind. No. 614/98, slip op. at 6–8, 10 (N.Y. Sup.Ct. June 1, 1998). As discussed above, the Court presumes the correctness of these factual findings. Because Long has not brought to the Court's attention anything in the record that would even suggest that the application of the voice identification procedure was unduly suggestive, he has failed to rebut this presumption by clear and convincing evidence as required under § 2254.

 Despite the voice identification procedure's facial integrity, Long's argument seems to rest on the mistaken belief that because such evidence was not specified in the N.Y.Crim. Proc. Law § 710.30 ("NYCPL § 710.30") notice [6] and was not mentioned during the pre-trial hearings, his right to federal due process was violated. The Court rejects this claim because, in general, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Thus, "rulings by state trial courts on evidentiary issues, even if erroneous, do not rise to the level of constitutional violation." *Copes v. Schriver,* No. 97 Civ. 2284, 1997 WL 659096, at *3 (S.D.N.Y. Oct. 22, 1997). In order to prevail on his habeas claim, Long must demonstrate that, despite the State's failure to declare the existence of evidence derived from the voice identification procedure, the trial court's admission of such evidence "was an error of constitutional dimension, and ... that constitutional error was [not] harmless beyond a reasonable doubt." *Rosario v.*

---

**6.** The notice provision of NYCPL § 710.30 holds that "[w]henever the people intend to offer at trial ... evidence of a statement made by a defendant to a public servant, which statement if involuntarily made would render

the evidence thereof suppressible upon motion ... [then] they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered." N.Y.Crim. Proc. Law § 710.30.

*Kuhlman,* 839 F.2d 918, 924 (2d Cir.1988); *see also Chapman v. California,* 386 U.S. 18, 22–24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Taylor v. Curry,* 708 F.2d 886, 891 (2d Cir.1983).

The Supreme Court has held that in order to make a showing of such a deprivation, "the error [must have] 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). In other words, it "must have been 'sufficiently material to provide a basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" *Dunnigan,* 137 F.3d at 125 (quoting *Johnson v. Ross,* 955 F.2d 178, 181 (2d Cir.1992)); *see also Cummings v. Artuz,* 237 F.Supp.2d 475, 486–87 (S.D.N.Y.2002). On the record before this Court, it is clear that Long has failed to meet this exacting standard.

■ Even assuming that the trial court erred in admitting evidence from the voice identification procedure despite the state's failure to so specify in the NYCPL § 710.30 notice or at any other time before trial, the Court finds that such an error does not rise to the level of potentially unduly influencing the minds of the jury, and thus, does not implicate Long's federal due process rights.[7] While "[t]he right to present a defense is one of the 'minimum essentials of a fair trial'" and is a constitutional right derived from the due process clause of the Fourteenth Amendment, the Court finds that the trial court's admission of this evidence did not deprive Long of the ability to fairly put forth a defense.[8] *Rosario,* 839 F.2d at 924 (quoting *Chambers v. Mississippi,* 410 U.S. 284, 294, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)).

Moreover, in light of the plethora of incriminating evidence in the record, including the remaining visual identifications by the other store employees that did not utilize the voice identification procedure, the Court is not persuaded that the voice identification evidence at issue here remotely approaches the level of "smoking gun" evidence that alone sealed Long's fate at the state criminal proceeding. *See Collins v. Scully,* 755 F.2d 16, 19 (2d Cir. 1985) (quoting *Nettles v. Wainwright,* 677 F.2d 410, 414–15 (5th Cir.1982)) ("[Erroneously admitted evidence] must have been 'crucial, critical, [and] highly significant.'"). The record in this case supports the finding that even if the state court committed error in admitting this evidence at trial, it was harmless beyond a reasonable doubt and was not likely to have altered the finding of Long's ultimate guilt.

---

**7.** It is important to note that the Appellate Division did not find such an error of state law on the part of the trial court in admitting this evidence. Accordingly, this Court will not disturb this finding, as principles at the heart of our federal system are offended "when a federal court instructs state officials on how to conform their conduct to state law." *McDarby v. Dinkins,* 907 F.2d 1334, 1337 (2d Cir.1990). More fundamentally, federal courts "have long proceeded on the premise that the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial.... But it has never been thought that such cases establish this Court as a rule-making organ for the promulgation of state rules of criminal procedure." *Spencer v. Texas,* 385 U.S. 554, 563–64, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967) (citations omitted). Accordingly, "habeas corpus relief does not lie for errors of state law." *Estelle,* 502 U.S. at 67, 112 S.Ct. 475; *see also Jones v. Stinson,* 229 F.3d 112, 120 (2d Cir.2000).

**8.** Indeed, in denying Long's motion for a mistrial, the trial court noted that Long was present during the identification lineup and was aware that a voice procedure had been utilized. Thus, the trial court reasoned that Long could have objected to this evidence and Long should not benefit from not having done so before trial.

Accordingly, the Court rejects Long's claim on this issue.

### 3. Heroin Evidence

■ Long also claims that the trial court erred in admitting evidence of the heroin in his possession when he was arrested because he was never charged with any crime relating to the heroin. The State argues that Long has failed to carry his heavy burden to prevail on such a claim. The Court agrees.

The relevant due process standard for this Court's habeas review of the trial court's evidentiary ruling regarding the heroin evidence is the same as that discussed above with respect to the voice identification evidence, namely, a federal habeas court must focus solely on transgressions of a prisoner's federally-protected rights and not on "state-court determinations on state-law questions." *Estelle*, 502 U.S. at 68, 112 S.Ct. 475; *see also Rosario*, 839 F.2d at 924.

In addition, as the State correctly identifies, the Federal Rules of Evidence allow the admission of evidence concerning a defendant's uncharged crimes provided that it is relevant to some issue other than a criminal disposition and its probative value outweighs its prejudicial impact.[9] *See* Fed.R.Evid. § 404(b) (stating that evidence of prior misconduct is not admissible to prove bad character, but may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of accident or mistake."). Such evidence is usually accompanied by a limiting instruction by the court. *See* Fed.R.Evid. § 105 (stating the when evidence is admitted for a particular purpose, "the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accord-

ingly"); *see also Huddleston v. United States*, 485 U.S. 681, 685–88, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988); *Bynum v. Duncan*, No. 02 Civ. 2124, 2003 WL 296563, at *8 (S.D.N.Y. Feb. 12, 2003). In particular, under the federal scheme, evidence of a defendant's post-robbery cash expenditures are admissible during the defendant's robbery trial provided the three conditions discussed above are satisfied. *See United States v. Anglin*, 169 F.3d 154, 161–62 (2d Cir.1999).

According to the transcript of the suppression hearing, the trial court admitted the heroin evidence in order to allow the State to rebut the suggestion that the discrepancy between the $300 Long allegedly stole during his last robbery and the $190 found in his pocket at the time of arrest about an hour later, exculpates Long and, by extension, to demonstrate a motive for committing the robberies. The Appellate Division affirmed the trial court's ruling, specifically noting the thorough and repeated limiting instructions the judge gave to the jury in explaining the purpose of the heroin possession evidence. The Appellate Division found that the probative value of the evidence on the trial court's two grounds for admission outweighed any potential prejudice and that the evidence was not unduly prejudicial. *See Long*, 737 N.Y.S.2d at 67.

■ Upon a careful review of the record in this case, the Court finds that the state courts admission of Long's heroin possession at the time of his arrest did not violate his federal due process rights. The evidence was clearly relevant to demonstrate motive and to explain why Long was not carrying the full amount that was stolen from the last robbery. Moreover, the state court judge's limiting instructions further ameliorated any potential prejudi-

---

9. The requirements under New York law are similar. *See, e.g., People v. Hudy*, 73 N.Y.2d 40, 538 N.Y.S.2d 197, 535 N.E.2d 250, 258– 59 (1988); *People v. Lewis*, 69 N.Y.2d 321, 514 N.Y.S.2d 205, 506 N.E.2d 915, 916–17 (1987).

cial effect. The Court is mindful that in many cases, the insinuation of unrelated drug crimes can have a significant prejudicial effect against a defendant at trial. Accordingly, the Court does not agree with the State's categorical assertion that because "[d]rug use bears no resemblance to robbery," there is little risk that the passions of the jury will be inflamed by its introduction. (Gov't Mem. at 45.) Nevertheless, the Court is persuaded that the heroin evidence at issue here was probative of whether Long had a motive for robbing the stores and that this probative value outweighed its prejudicial effect. Thus, Long's claim on this point fails because the "[a]dmission of evidence that satisfies [the federal rules of evidence] will not violate a [state] criminal defendant's due process rights or provide a basis for habeas corpus relief." *Ford v. Crinder*, No. 97 Civ. 3031, 2001 WL 640807, at *5 (S.D.N.Y. June 8, 2001); *see also Bynum*, 2003 WL 296563, at *8; *Shannon v. Artuz*, 984 F.Supp. 807, 810 (S.D.N.Y.1997).

■ Even if the state court erred in this regard, however, the Court finds that there is no basis upon which to grant Long relief. As with Long's claim regarding the voice identification evidence, the Court finds that in light of the overwhelming eyewitness testimony at Long's trial, the introduction of the heroin evidence by itself did not deny Long his constitutional right to a fair trial and was not sufficiently material to provide the sole or primary basis for Long's conviction or to create a reasonable doubt. *See Collins*, 755 F.2d at 18–19. Because any error by the state court was at most harmless, the Court rejects Long's claim regarding the admission of the heroin evidence.

### 4. Sentence as a Persistent Felony Offender

■ Finally, Long claims that his sentence as a persistent felony offender violates his rights to notice of the charges against him, to a jury trial, and to due process of law, pursuant to the Fourteenth Amendment and the United States Supreme Court's holding in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Long contends that the trial court imposed an enhanced sentence based on its factual determination of his prior criminal record rather than submitting this determination to the jury.

The trial court sentenced Long as a persistent violent felon based on his June 20, 1977 conviction for robbery in the first degree; his December 6, 1977 convictions for robbery in the second degree, attempted robbery in the second degree, and robbery in the third degree; and his October 11, 1988 conviction for robbery in the first degree. Long made no objection at his sentencing proceedings to the fact of these prior convictions. Indeed, Long's objection regarding his prior convictions was first raised on appeal to the Appellate Division, which denied his claim as unpreserved for appellate review, and in any event found the claim meritless. *See Long*, 737 N.Y.S.2d at 67. For the reasons discussed below, the Court rejects Long's claim on this point.

■ Under the independent and adequate state ground doctrine,

comity and federalism concerns and the requirement that States have the first opportunity to correct their own mistakes [dictate that] federal habeas courts generally may not review a state court's denial of a state prisoner's federal constitutional claim if the state court's decision rests on a state procedural default that is independent of the federal question and adequate to support the prisoner's continued custody.

*Epps v. Commissioner of Corr. Servs.*, 13 F.3d 615, 617 (2d Cir.1994) (citing *Coleman v. Thompson*, 501 U.S. 722, 729–30,

111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). Where a petitioner fails to comply with state procedural rules, his claim is procedurally defaulted and is not cognizable on habeas review. *See Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Wainwright v. Sykes,* 433 U.S. 72, 86–87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

Federal courts, however, recognize three caveats to the independent and adequate state ground doctrine. First, a procedural bar will be presumed to constitute and independent and adequate state ground to deny habeas relief only in cases where the highest state court that rendered a judgment in the case "clearly and expressly states that its judgment rests on a state procedural bar." *Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (internal quotations and citations omitted); *see also Levine v. Commissioner of Corr. Servs.,* 44 F.3d 121, 126 (2d Cir. 1995). Second, "[a]n exception obtains ... if the petitioner demonstrates both good cause for and actual prejudice resulting from his noncompliance with the state's procedural rule." *Garcia v. Lewis,* 188 F.3d 71, 76 (2d Cir.1999) (citing *Engle v. Isaac,* 456 U.S. 107, 129, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)).[10]

Finally, a federal habeas court may consider the claim where the failure to do so will "result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546. A miscarriage of justice occurs "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent...." *Murray,* 477 U.S. at 496, 106 S.Ct. 2639; *see also Dixon v. Miller,* 293 F.3d 74, 81 (2d Cir.2002). A petitioner establishes actual innocence by demonstrating that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Dixon,* 293 F.3d at 81 (internal quotations and citations omitted). In this context, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (citing *Sawyer v. Whitley,* 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992)).

In this case, the Appellate Division clearly and explicitly rejected Long's *Apprendi* claim as "not preserved for appellate review". *Long,* 737 N.Y.S.2d at 67. Accordingly, because an "explicit invocation of the procedural bar" constitutes an adequate state ground upon which a claim is procedurally defaulted, this claim is barred from habeas review. *Garcia,* 188 F.3d at 77. Moreover, the Appellate Division's alternative rejection of this claim on the merits will not preclude dismissal on procedural grounds. *See Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir.1990) ("[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim."). As the United States Supreme Court aptly explained:

> [A] state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition,

---

**10.** In this context, "cause" is defined as "'some objective factor, external to the defense [that] impeded counsel's efforts' to raise the claim in state court," *McCleskey v. Zant,* 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (quoting *Murray,* 477 U.S. at 488, 106 S.Ct. 2639), and "actual prejudice" is defined as *"actual* and substantial disadvantage, infecting ... [the defendant's] entire trial with error of constitutional dimensions." *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) (emphasis in original). Where a petitioner is unable to show cause, however, the court need not consider actual prejudice. *See McCleskey,* 499 U.S. at 501, 111 S.Ct. 1454.

the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state also relies on federal law.

*Harris,* 489 U.S. at 264 n. 10, 109 S.Ct. 1038. In addition, the Appellate Division's explicit rejection of this claim on procedural grounds also effectively satisfies the first caveat of the adequate and independent ground discussed above, namely, the *Harris* presumption against state courts issuing judgments based on state procedural bars. Thus, the Court considers only whether either of the latter two caveats can save Long's claim.

■ First, the Court finds that Long has failed to show any cause or actual prejudice for his default. Long has not alleged, nor does the record reflect, any external and objective factor that impeded Long's efforts to build a defense or any substantial disadvantage tainting his trial with constitutional error. Second, the "miscarriage of justice" exception is clearly inapplicable in this case because Long is not claiming actual innocence. Rather, Long is challenging the constitutionality of his sentence, and as such, his claim is procedurally barred.

Even were the Court to consider the merits of Long's claim, he would still not be entitled to the relief he seeks. In *Apprendi,* the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348.

*Apprendi* "clearly is inapplicable on its face to a challenge ... to an increased sentence based on prior convictions." *Green v. Herbert,* No. 01 Civ. 11881, 2002 WL 1587133, at *20 (S.D.N.Y. July 18, 2002). Thus, for the purpose of Long's habeas claim here, the relevant inquiry is whether Long's sentence was increased beyond the statutory maximum, and if so, whether the increase was based solely on the existence of a prior conviction, for which *Apprendi* expressly carved out an exception.

The trial court convicted Long of five counts of robbery in the first degree for violating NYPL § 160.15(4), and one count of attempted robbery in the first degree for violating NYPL §§ 110.00/160.15(4), which are class B and C violent felony offenses with a maximum of 25 and 15 years, respectively. Long was sentenced, pursuant to NYPL § 70.08, to a maximum of life imprisonment as a persistent violent felony offender, which well exceeds the statutory maximum. Thus, having established that Long's sentence was increased beyond the statutory maximum, the last question before the Court is whether Long's sentence was enhanced, pursuant to NYPL § 70.08, solely on the existence of prior convictions.

■ Under NYPL § 70.08, after a court finds that the defendant was convicted of prior violent felonies as a matter of fact, a court "must impose" violent felony offender status on the defendant. N.Y. Penal Law § 70.08(2). Thus, NYPL § 70.08 is squarely within the narrow exception announced in *Apprendi* encompassing judicial fact-finding based solely on prior convictions.[11] Consequently, the

---

11. In stark contrast to NYPL § 70.08's mandatory provisions for imposing persistent offender status on a defendant based on prior convictions, NYPL § 70.10 (" § 70.10") vests the court with *discretion* to declare a defendant a persistent violent offender. Under NYPL § 70.10, the sentencing court is author-

ized to conduct a hearing to independently adjudge whether "it is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and lifetime supervision will best serve the

Court finds that Long's sentence as a persistent felony offender does not run afoul of *Apprendi*. Accordingly, Long's claim is denied.

Having found that Long's habeas claims suffer from both procedural and substantive defects, the Court denies his petition for a writ of habeas corpus in its entirety.

## III. *ORDER*

For the reasons set forth above, it is hereby

**ORDERED** that the Court's Order dated August 19, 2004 is amended to incorporate the discussion and decision set forth above; and it is further

**ORDERED** that the petition of Vernon Long ("Long") for a writ of habeas corpus under 28 U.S.C. § 2254 is DENIED in its entirety.

Because Long has failed to make a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c).

The Clerk of Court is directed to close this case.

**SO ORDERED.**

public interest." N.Y. Penal Law § 70.10(2). Only after a court has made both findings can it impose the enhanced sentence. *See id.; see also People v. Rosen*, 96 N.Y.2d 329, 728 N.Y.S.2d 407, 752 N.E.2d 844 (1st Dep't 2001); *People v. Rawlins*, Ind. No. 2476/03, 2 Misc.3d 1002(A), 2004 WL 362349 (N.Y.Sup. Ct. Feb.25, 2004). Thus, while the continued viability of NYPL § 70.10 may be questionable in light of *Apprendi*, it is clear that NYPL § 70.08 squarely fits the exception for prior convictions discussed in *Apprendi*.